**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Jody Holcombe, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:15-cv-2852-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Helena Chemical Co., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Helena Chemical Co.'s motion for partial[1] summary judgment (ECF No. 42). At this time, the Court also addresses Plaintiff Jody Holcombe's motion to determine the sufficiency of Helena Chemical's objection to one of his requests for admission (ECF No. 33). For the reasons stated herein, the Court grants in part and denies in part Helena Chemical's motion for partial summary judgment, and it denies Holcombe's sufficiency motion.

**BACKGROUND**

This negligence action arises out of a 2012 collision between a tractor-trailer driven by Holcombe and another driven by Helena Chemical employee Michael Rogers. The collision occurred on Long Point Road, a four-lane road in Mount Pleasant, South Carolina. Rogers was making a delivery to a landscaping store that, as he headed westward in the left-hand lane, was located off the road to his right. Thus, to make the delivery, Rogers needed to make a right-hand turn. Rather than move into the right lane to begin the right-hand turn, Rogers steered his rig left

---

1. Although Helena Chemical styled its motion as one "for summary judgment," thus suggesting it wants the case dismissed in its entirety, Helena Chemical makes clear in its briefs that it is seeking summary judgment on most— but not all—of the theories of liability that Plaintiff Jody Holcombe has asserted. Thus, the motion is in substance one for partial summary judgment, and the Court will refer to it using language that reflects its substance.

onto the paved median and then turned back sharply to the right across both westward lanes of Long Point Road. As Rogers crossed into the westward right-hand lane, he collided with Holcombe, who had been driving in that lane a short distance behind Rogers. Holcombe alleges he has sustained substantial injuries from the collision.

The turn Rogers made is known as the jug-handle maneuver. Materials in the record indicate that the maneuver is unsafe and that tractor-trailer drivers should instead make right-hand turns from the right lane, using what is called the button-hook maneuver. Rogers has said he learned the jug-handle maneuver during his on-the-job training with Helena Chemical. According to Rogers, another Helena Chemical driver taught him to perform the maneuver on Long Point Road and did so for the specific purpose of showing Rogers how to make deliveries to the landscaping store.

Holcombe has sued Helena Chemical for his personal injuries. He asserts a variety of negligence theories, including that Helena Chemical failed to enact rules and policies to properly investigate truck driver applicants; failed to enact rules and policies regarding the hiring, training, and supervision of drivers; and negligently hired, trained, and supervised Rogers. Helena Chemical denies all of Holcombe's negligence allegations and asserts he is at fault for the collision.

## DISCUSSION

Helena Chemical seeks summary judgment on several specific portions of Holcombe's negligence cause of action. As explained below, the Court is dismissing Holcombe's negligent hiring theory, but others survive Helena Chemical's motion. As the Court also explains, the dismissal of that one theory affects the disposition of Holcombe's sufficiency motion.

### I.     Helena Chemical's Motion for Partial Summary Judgment

Holcombe's sole cause of action is one for negligence. His complaint divides that claim into seventeen subparts, in which he asserts theories of *respondeat superior* liability for Rogers' conduct as well as the direct-liability theories of negligent hiring, supervision, and training. Helena Chemical seeks summary judgment on those direct-liability theories and on several of the *respondeat superior* theories.

Summary judgment is an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge may not weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

#### A.     Negligent Hiring

Helena Chemical first seeks summary judgment on Holcombe's claim that it negligently hired Rogers. "[W]here an employer knew or should have known that its employment of a

3

specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring . . . the employee." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008).[2] "Negligent hiring cases 'generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties.'" *Kase v. Ebert*, 707 S.E.2d 456, 459 (S.C. Ct. App. 2011) (quoting *Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (S.C. Ct. App. 2005)); *see also Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 538 (D.S.C. 2014) ("The issue of an employer's knowledge concerns the employer's awareness that the employment of a specific individual created a risk of harm to the public." (citing *Kase*, 707 S.E.2d at 459)). In *Doe*, the South Carolina Court of Appeals explained that these two elements

> are not necessarily mutually exclusive, as a fact bearing on one element may also impact resolution of the other element. From a practical standpoint, these elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and the nexus or similarity between the prior acts and the ultimate harm caused. Such factual considerations—especially questions related to proximate cause inherent in the concept of foreseeability—will ordinarily be determined by the factfinder, and not as a matter of law. Nevertheless, the court should dispose of the matter on a dispositive motion when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard.

624 S.E.2d at 450 (citations omitted).

The record before the Court lacks information about Rogers' pre-hiring driving history. It reveals only that one of Rogers' prior jobs involved driving pick-up trucks in rural settings and that he may have lacked prior experience driving tractor-trailers in high-traffic areas. The record contains no evidence of any pre-hiring acts of wrongdoing by Rogers, let alone acts that might be similar to the incident here. That scant evidence of Rogers' past is not sufficient to allow a reasonable jury to conclude that Helena Chemical should have foreseen the risk Rogers posed.

---

2.   The parties agree that South Carolina law applies to Holcombe's claim.

Holcombe maintains Helena Chemical was negligent in hiring someone who lacked the training and experience needed to safely operate a tractor-trailer. As part of that theory, Holcombe faults Helena Chemical for not adequately investigating Rogers' driving experience and qualifications before it hired him. Holcombe has provided some evidence that Helena Chemical failed to thoroughly vet Rogers and that, in so failing, it may have violated its own hiring policies and at least one federal regulation relating to the hiring of tractor-trailer drivers. However, nothing in the record shows how that failure proximately caused Holcombe's injuries. *See Peterson v. Nat'l R.R. Passenger Corp.*, 618 S.E.2d 903, 908 (S.C. 2005) (affirming summary judgment for defendants due to lack of evidence that defendants' failure to comply with their internal safety policies caused plaintiffs' injuries); *Seals ex rel. Causey v. Winburn*, 445 S.E.2d 94, 96 (S.C. Ct. App. 1994) (per curiam) ("The violation of a statute, while negligence per se, will not support a recovery for damages unless such violation proximately caused or contributed to the injury complained of."). Rather, as Holcombe has stressed throughout this case, a Helena Chemical driver taught Rogers the jug-handle maneuver—the act that Holcombe asserts directly caused his injuries—as part of his post-hire training. Helena Chemical cannot be liable for negligent hiring based on something it taught Rogers after it hired him.

Because Holcombe has not provided evidence that would allow a reasonable jury to find Helena Chemical liable for negligent hiring, the Court grants summary judgment to Helena Chemical on that theory.

### B.     Negligent Supervision

Helena Chemical next seeks summary judgment on Holcombe's claim that it negligently supervised Rogers. In *Degenhart v. Knights of Columbus*, the South Carolina Supreme Court

5

found that an employer may be liable for negligent supervising an employee who, acting outside the scope of his employment, intentionally harms another while using a chattel of the employer, if the employer knew or should have known that it had the ability to control its employee and that there was the need and opportunity for it to exercise such control.  420 S.E.2d 495, 496 (S.C. 1992).  Helena Chemical argues that Holcombe's claim fails because Holcombe has not produced any evidence that Rogers intentionally harmed him.

Helena Chemical is correct that nothing provided to this Court suggests Rogers meant to harm Holcombe.  Nevertheless, for two reasons, the absence of intentional-harm evidence here is not dispositive.

First, the Court is not persuaded that South Carolina law makes intentional harm an indispensable element of every negligent supervision case.  To be sure, *Degenhart* and several subsequent South Carolina appellate decisions mention intentional harm in their formulations of negligent supervision.  *See, e.g.*, *Doe v. Bishop of Charleston*, 754 S.E.2d 494, 500 (S.C. 2014); *Kase*, 707 S.E.2d at 459.  However, when the state Supreme Court revisited the concept of supervisory liability in *James v. Kelly Trucking Co.*, it cited *Degenhart* and yet left intentional harm out of the discussion:

> where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee . . . .  *See* Restatement (Second) of Torts § 317 (1965) (*[c]ited with approval in Degenhart v. Knights of Columbu*s, 309 S.C. 114, 116, 420 S.E.2d 495, 496 (1992)). As this recitation suggests, the employer's liability under such a theory does not rest on the negligence of another, but on the employer's own negligence.

661 S.E.2d 329, 330–31 (S.C. 2008) (internal citations omitted).  Rather than hinging negligent supervision liability on the existence of intentional harm, that foreseeability-based standard "requires the court to focus specifically on what the employer knew or should have known about

6

the specific conduct of the employee in question." *Hoskins v. King*, 676 F. Supp. 2d 441, 448 (D.S.C. 2009) (discussing *James*, and collecting cases).

That foreseeability-based standard also appeared twelve years earlier in *Rickborn v. Liberty Life Insurance Co.*, where the state Supreme Court held that "[a]n employer owes a duty of care to a third party when the possible harm resulting to the third party by the employee could have been reasonably anticipated by the employer." 468 S.E.2d 292, 299 (S.C. 1996). *Rickborn* involved an insurance agent who negligently mishandled a life insurance application, resulting in the denial of benefits when the insured later died. *See id.* at 294–95. The agent did not mishandle the application with an intent to harm the insured or the beneficiary; rather, he was a "sub-par" agent whose carelessness in processing the application caused the insurance company to reject it. *See id.* at 302–03. Despite that absence of intent, the Supreme Court held the agent's employer was liable for negligent supervision based on its knowledge of the agent's poor work performance. *Id.* at 303 ("Liberty Life was alerted to the fact that [the agent's] carelessness could cause harm and, therefore, it breached a duty of care owed to [the insured] by failing to properly supervise him.").

Even the *Degenhart* Court recognized an alternative standard for negligent supervision that does not include intentional harm:

> An employer also may have a legal duty arising out of a contract which flows to a plaintiff with whom he is not in privity of contract. This occurs when an employer, by entering into a contract with an employee, places himself in such a relation with the plaintiff that the law imposes upon the employer an obligation, sounding in tort and not in contract, to act in such a way that the plaintiff will not be injured.

*Degenhart*, 420 S.E.2d at 496. That duty can make the employer liable for "the employee's actions undertaken in his capacity as an agent for the employer." *Charleston, S.C. Registry for*

7

*Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP*, 598 S.E.2d 717, 723 n.1 (S.C. Ct. App. 2004).

Thus, although some South Carolina cases mention intentional harm as an element of negligent supervision claims, others do not. The unifying feature of the latter line of cases is that the employee caused the harm while acting within the scope of his employment. South Carolina law therefore appears to require proof of intentional harm only where the employee caused harm while acting outside the scope of his employment. Because it is undisputed that Rogers was acting within the scope of his employment when the two vehicles collided, Holcombe's failure to show Rogers meant him harm is immaterial.

Second, Holcombe has asserted a theory of negligent training, and as Helena Chemical points out, negligent training is merely a specific negligent supervision theory by another name. *See Gainey v. Kingston Plantation*, No. 4:06-3373-RBH, 2008 WL 706916, at *7 n. 4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent supervision."). As discussed above, Rogers has testified that Helena Chemical trained him to perform the jug-handle maneuver and that he was taught the maneuver specifically for the purpose of making the delivery he was attempting at the time of the collision. Holcombe has also provided evidence that the jug-handle maneuver is improper and dangerous. This evidence is sufficient for a training-based negligent supervision claim to survive summary judgment.

Whether the claim is simply one of a negligent failure to supervise or instead involves improper training, the key question is whether the employer knew or should have known of the danger the employee posed to others. *See Snowden v. United Rentals (N. Am.) Inc.*, No. 2:14-cv-2740-PMD, 2015 WL 5554337, at *8 n.6 (D.S.C. Sept. 21, 2015) (noting the foreseeability

requirement applies to pure negligent supervision claims and to negligent hiring claims). Helena Chemical argues there is no evidence that it should have anticipated Rogers' danger to people on the road. The Court disagrees. Rogers' testimony about his training, if believed, would enable a reasonable jury to conclude Helena Chemical knew or should have known Rogers may attempt the unsafe jug-handle maneuver. Therefore, the Court declines to grant Helena Chemical summary judgment on Holcombe's negligent supervision claim.

### C.     Challenges to Allegations in Holcombe's Complaint

As mentioned above, Holcombe broke his allegations of negligence in his complaint into seventeen subparts, which he labeled (a) through (q). Helena Chemical raises challenges to many of those subparts.

#### 1.     Allegations Regarding the General Population

At several points in his complaint, Holcombe alleges Helena Chemical endangered large classes of people, such as "other motorists," "other persons lawfully using the highway," "innocent motorists," and "everyone on the highway." (Compl. ¶ 8(a)–(c), (i), (k).) Helena Chemical asserts those allegations show Holcombe is attempting to bring claims on behalf of the general public. He cannot do that, Helena Chemical argues, because he lacks standing to assert claims for anyone but himself.

Although Holcombe would likely have trouble proving that Helena Chemical endangered literally "everyone on the highway," the Court does not share Helena Chemical's worry that Holcombe is trying to act as a private attorney general for the entire highway-travelling population. Holcombe has not stated that he wishes to recover damages for anyone but himself. "[E]veryone on the highway" and similar allegations simply refer to classes of persons, of which Holcombe was a member, to whom Helena Chemical owed a duty of due care. The Court

therefore need not address Helena Chemical's standing argument, as it addresses an issue not present in the case.

### 2. Allegations Regarding Helena Chemical's Hiring, Training, and Supervision Practices Generally

Holcombe alleges in his complaint that Helena Chemical engaged in improper hiring, supervision, and training practices. (*See* Compl. ¶ 8(m)–(o).) Helena Chemical reads those allegations as extending beyond its hiring, supervision, and training of Rogers to include an attack on its hiring, supervision, and training practices in general. Helena Chemical argues that such allegations fail as a matter of law because they are vague and are too broad to comport with South Carolina law.

Helena Chemical's vagueness objection is untimely. Objections that allegations are vague must be raised through a motion for more definite statement. *See* Fed. R. Civ. P. 12(e). That motion must be filed before the objecting party files its response to the purportedly vague pleading. *Id.* Helena Chemical did not file such a motion, or any other motion, before it filed its answer. It is therefore too late to challenge Holcombe's allegations as vague.

Helena Chemical's argument that Holcombe's allegations are too broad to fit within South Carolina negligence law is a challenge to those allegations' legal sufficiency, a challenge that falls within Rule 12(b)(6). Because this argument comes long after Helena Chemical filed its answer, it should be viewed as a request for relief under Rule 12(c), rather than under Rule 56. *See* Fed. R. Civ. P. 12(h)(2)(B). Regardless of the standard, though, the Court need not address the argument. Helena Chemical has again read more into Holcombe's allegations than Holcombe himself has intended. The Court construes Holcombe's complaint as alleging only that Helena Chemical's poor hiring, supervision, and training practices resulted in Rogers injuring him. In other words, although Holcombe uses general language to attack the soundness

of certain Helena Chemical practices, his complaint seeks relief for those practices only insofar as they contributed to Rogers harming him. Thus, the Court will not pass upon the sufficiency of an attack Holcombe does not appear to be mounting.

### 3. Rule-Violation Allegations

Finally, Holcombe alleges in his complaint that Helena Chemical failed "to obey safety rules," violated "the laws, statutes, regulations[,] and ordinances," failed "to enforce their own rules and policies regarding the operation of trucks," and violated "trucking industry safety rules." (Compl. ¶ 8(h), (j), (l), (q).) He also avers the company failed to enact rules and policies for hiring, supervision, and training, and for "protect[ing] the safety of innocent motorists during the operation of tractor[-]trailer trucks." (*Id.* ¶ 8(k), (n).) Helena Chemical argues these allegations are unduly vague because they do not identify any specific set of rules it allegedly violated. For the reasons stated above, this vagueness objection is untimely under Rule 12(e).

### D. Conclusion as to Partial Summary Judgment Motion

For the foregoing reasons, the Court grants Helena Chemical summary judgment on Holcombe's negligent hiring claim. The Court otherwise denies Helena Chemical's motion.

## II. Holcombe's Motion to Determine the Sufficiency of Helena Chemical's Response to a Request for Admission

In the course of discovery, Holcombe asked Helena Chemical to admit the following statement:

> 49 C.F.R. § 391.21 prohibits a person from driving a commercial motor vehicle for Helena Chemical Company unless he/she has completed and furnished Helena Chemical Company with an application for employment that meets the requirement of paragraph (b) of this section.

(Helena Chem. Co.'s Resps. to Pl.'s Second Req. for Admiss., ECF No. 33-1, at 4). Helena Chemical declined to answer, objecting that it improperly sought a legal conclusion. Holcombe asks the Court to determine whether that objection is justified. *See* Fed. R. Civ. P. 36(a)(6).

Helena Chemical responds to Holcombe's motion by defending its stated objection. It also asserts the motion is untimely under Local Civil Rule 37.01(A) (D.S.C.).

The Court need not address either side's arguments. Federal Rule of Civil Procedure 36(a)(1) provides that parties may "serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either; and the genuineness of any described documents." Under that scope,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P 26(b)(1).[3] Holcombe's request to admit addresses the heart of his negligent hiring claim. As discussed above, that claim fails for at least two reasons unrelated to the issue of whether Helena Chemical complied with the regulation mentioned in Holcombe's request to admit. The Court is dismissing the negligent hiring claim on those unrelated grounds, and the Court cannot discern any other remaining claim or defense to which the request would be

---

3.    This is the current version of Rule 26(b)(1), which became effective on December 1, 2015. *See* Order (U.S. Apr. 29, 2015). This case was already pending by that date. The 2015 amendments to the Federal Rules of Civil Procedure govern in cases pending on December 1, 2015, "insofar as just and practicable." *Id.* (emphasis added). In a previous order, the Court found it just and practicable to apply the newly amended version of Rule 26 in this case. The Court sees no reason to depart form that finding now.

relevant. Consequently, the request is outside the scope of Rule 36(a)(1). The Court therefore denies Holcombe's motion to evaluate the sufficiency of Helena Chemical's objection.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Helena Chemical's partial summary judgment motion is **GRANTED IN PART** and **DENIED IN PART**. It is further **ORDERED** that Holcombe's sufficiency motion is **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**February 23, 2017**
**Charleston, South Carolina**

13